On consideration of the petition for a re-hearing, the court delivered the following supplemental opinion overruling the petition.
Judge Underwood,
delivered the opinion of the court.
We have again examined thé record, containing more than 500 pages, which sets out the various suits instituted relative to the property once owned by Alex. D. Orr. In regard to the slave Bill, we still *396 think no decree can be rendered against Pickett m any of the cases exhibited in the present record. The original bill, filed by Mrs. Orr and her daughters their husbands, does not mention the sale of Bill to satisfy the executions of Pickett, Perrine and Gill, It does not charge Pickett with any fraud in causing the sheriff to levy on Bill. Whether Pickett gave the sheriff any directions or not as to the levy, is not stated in any of the bills. Griffin and ux. and Andrews and ux. make their answer to Warfield’s bill, a tfiH against Pickett, William Orr, &c. and therein charge that the sale of Bill tciok place at the instigation of Pickett, when Wm. Orr purchased with Payne at the price of $500; they, therefore, pray that Wm. Orr and Payne may be compelled to deliver up Bill, and account for his hire: at all events, to pay them two-thirds of his value, and that they may be enjoined from paying Pickett the amount of their safe bond. It is very clear, from the whole record, that Payne was no more than Wm. Orr’s surety for the purchase of Bill. Wm. Orr was not served with process to answer the bill of Griffin and Andrews and their wives. ’[This fact'seems nat tQ have been noticed by counsel. Afterwards Griffin and Andrews and their wives and Mary B. Orr, Wm. Orr and Payne united in filing a bill, in which they charge, that Bill was sold to satisfy executions in favor of Pickett, Perrine aud Gill, that Wm, Orr purchased him at the price of $500, and executed sale bonds with Payne as surety; where, fore, they pray that Wm. Orr and Payne might be restrained from paying the money on the sale bonds until the suit instituted by Mrs. Orr and her daugh-. ters and their husbands, was finally heard, and that the court might then decree the money to them. It is thus obvious, that the ladies and their husbands have made no serious effort to obtain Bill from Wm. Orr, He has never been a defendant in any suit that claimed a recovery of Bill. Pickett has never been proceeded against and notified by any direct allegation, that he would be held responsible because he caused thé sheriff to levy on Bill and to sell him. It does not appear that Pickett ever did any thing more than Perrine and Gill, for whose benefit, likewise, Bill w"as sold. Indeed, Pickett in his answer to Warfield’s bill expressly denies that he had Bill sold, “unless the *397 circumstance ofhis having an execution in the hands .of the sheriffagainst A. D. Orr, at the same time other persons had similar process in the sheriffs hands, supports the allegation &c.” made against him upon subject by Warfield. We take this to be an averment, on the part of Pickett, that he left the sheriff uninfluenced by any directions from him, as to a levy on and sale of Bill. True, the sheriff in his deposition gives it as an opinion, that Pickett directed him to make the levy, but taking all the allegations and proof together, a direct interference, by Pickett, in causing Bill to be sold, is not satisfactorily made out or putin issue. Perrine and Gill were judgment creditors and got much the greater part of the amount for which' Bill sold placed as a creditor) their executions, and if it be conceded that there is a difference between the case of McGhee vs. Ellis and Browning and the present, so far as the principles of that case apply to Pickett, there is not a particle of difference in respect to Perrine and Gill, and hence there is no pretext for saying, that Wm. Orr and Payne -should be discharged from their sale bonds fo Perrine and Gill, or compelled to pay their amounts to Mrs. Orr and her daughters. Counsel are altogether mistaken in supposing that Bill was sold under an execution in favor of Pickett, Perrine and Gill jointly. We also think he ought not to be 'discharged from his liability to Pickett. He did not implead Pickett upon the ground that Pickett had done any act by which he was defrauded or induced to purchase Bill. There is strong ground in the record for believing that Pickett may have acted without fraud, even if he had directed the sheriff to levy on and sell Bill. The execution against A. D. Orr, which was levied'on Bill, was, according to Pickett’s statement, which is supported -by many circumstances appearing in the record, issued upon a judgment by which Pickett recovered the money he had paid to Slack, and which Slack had lent to enable Pickett and Stith fo discharge their sale bonds. That Pickett should be secured in the payment of the money so paid to Slack, is just as equitable and proper as that the slaves, after this is done, should be secured to Mrs. Orr and her daughters. No objection has been made to that part of the original opinion which directs that Pickett’s lien on the slaves to secure the *398 payment of the money borrowed of Slack must be respected, and surely, in justice, none could be made. Pickett, it seems to us, has made a part of this money, out of the sale of Bill. Perrine and Gill have appropriated to* themselves the greater part of Bill’s value, and under these circumstances, we see no equity in compelling Pickett to pay for him.
Talbot and Mills, for appellants; Crittenden and Hag-gin, for appellees.
Wherefore, the opinion must remain unchanged.
The suggestion that Mrs. Orr is entitled to a greater share in the slaves than her daughters, is without weight. The first bill filed by her and her daughters, after speaking of the advance made by B. G. Orr, for the benefit of the three equally, says “John Linton being actúa ted;,by similar benevolentfeelings towards your oratrixes also advanced $400, upon the same conditions and for the same purpose.” The same idea is carried throughout the pleadings. We will not say, however, that the statement of the bills would be obligatory in a new controversy between the ces-tue qua trusts.
None of the opinions delivered are intended to preclude Mrs. Orr and her daughters from hereafter asserting claim to Bill, if they choose to sue for him in the possession of Wm. Orr. They have never yet instituted such an action. In the attempt blade by Griffin and ux. and Andrews and ux. Mrs. Orr was not a co-complainant with them.
[On the point touched in this case, the Chief Justice is. not entirely satisfied with the principle settled in McGhee vs. Ellis and Browning.]